Judgment rendered June 30, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,989-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: GRAND JURY PROCEEDINGS
(CONTEMPT - KEM JONES)

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. M1065

Honorable Charles Blaylock Adams, Judge

* * * * *

| | |
|---|---|
| KEM JONES | In Proper Person, Appellant |
| CHARLES BLAYLOCK ADAMS | Counsel for Appellee, State of Louisiana |
| JONES WALKER LLP<br>By: MICHAEL WILLIAM MAGNER | Counsel for Appellees, DeSoto Parish Sheriff's Department and Jayson Richardson, Sheriff DeSoto Parish |

* * * * *

Before PITMAN, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Kem Jones, an investigator with the Office of the DeSoto Parish District Attorney ("DA"), appeals a trial court's contempt finding after he was observed at a hearing related to a grand jury proceeding holding his cell phone in a manner that indicated he was photographing or filming those present in the courtroom. We affirm the finding of contempt.

## FACTS

In order to put this entire matter in context, it is necessary to briefly review the conflict brewing in the criminal justice system in DeSoto Parish in 2017 and 2018, particularly involving the DA and the DeSoto Parish Sheriff's Office ("DPSO"). The conflict apparently originated from the disruption of funding through the Local Area Compensated Enforcement Program ("LACE"). Under LACE, off-duty law enforcement officers work details to enhance public safety and generate revenues by writing traffic citations to motorists.

According to a report issued by the Louisiana Legislative Auditor, the DPSO collected fine and court costs generated by LACE details and distributed them to the 42nd JDC Criminal Court Fund, the DPSO, the DA, and other agencies and organizations as set out by state law. The Criminal Court Fund would then reimburse payroll and related costs to the law enforcement agency performing the LACE details. That ended in March of 2017 when the DA began paying for LACE details directly and offering pretrial diversion to drivers receiving traffic citations during the LACE details. The DPSO ceased working LACE details in June of 2017. Future details were worked by officers from the Mansfield Police Department and troopers from the Louisiana State Police.

On January 11, 2018, Sheriff Rodney Arbuckle wrote to the Legislative Auditor that he had reasonable cause to believe there had been a misappropriation of public funds or assets of his agency regarding the operation of the LACE program. He further wrote that the program had been suspended since June 2, 2017, and any possible misappropriation was no longer considered to be ongoing. Arbuckle retired before the end of his term, which was completed by interim-Sheriff Jayson Richardson. The election to succeed Sheriff Arbuckle was held in the fall of 2018.

On July 12, 2018, the Louisiana Legislative Auditor released an audit report concerning the DA's pretrial diversion program. The report noted that the audit was initiated after complaints were received that the DA's extensive use of pretrial diversion for LACE traffic citations had an adverse effect on DeSoto Parish's criminal justice system. The report determined that the traffic diversion program had significantly reduced funds flowing to the criminal justice system, that a cooperative endeavor agreement between the DA and the Public Defender concerning funding appeared to be improper, and that the DA's financial records for the traffic diversion program were inaccurate and incomplete.

In October of 2018, District Attorney Gary Evans requested that a grand jury be summoned to appear on October 8 to examine alleged payroll fraud by DPSO employees. On October 5, Sheriff Richardson filed a motion to recuse the DA from the grand jury proceeding. His motion was set for hearing on October 8.

At the October 8 hearing, which was presided over by Judge Charles Adams, the DA and the Sheriff agreed to continue the motion to recuse to October 12. The DA also agreed not to pursue any grand jury action until

2

that date.  After a bench conference, Michael Magner, the attorney for Sheriff Richardson, made Judge Adams aware of reports that Kem Jones had been photographing or videoing proceedings in the courtroom.  Judge Adams directed Assistant District Attorney Lea Hall to retrieve Jones's phone.  Judge Adams sent a deputy sheriff to accompany Hall.  While the court remained in recess, Magner informed Judge Adams that Assistant District Attorney Cloyce Clark was believed to have taken photographs in the courtroom.  When Clark and Jones returned to the courtroom, Judge Adams ordered them to produce their phones.  Jones had two phones while Clark only had one phone.  Jones told the court that he had taken a photograph of District Attorney Evans outside the courtroom.  Judge Adams told Clark and Jones that he would return their phones as soon as he could. Court was then adjourned.

The phones were transferred to the possession of the Bossier City Marshal's Office on October 8.  Judge Adams signed a written order on that date for Clark and Jones to provide their passcodes to the phones.  Attorney J. Dhu Thompson filed a motion on behalf of Clark and Jones to request a hearing concerning the order to provide the passcodes.

On October 9, Judge Adams signed an order for Clark and Jones to appear on October 12 to show cause why they should not be held in contempt of court for violating Uniform District Court Rule 6.1(e), La. C.C.P. arts. 221-227, and La. C. Cr. P. arts. 16-25.

On October 9, Judge Adams signed an order stating that he found probable cause for a search of the three phones and ordered that the contents of the phones be retrieved, analyzed, stored, and delivered to the court.

On October 11, Sheriff Richardson requested and was granted the issuance of subpoenas duces tecum to Clark and Jones ordering them to produce all images and video recordings on their phones taken on October 8 inside the courthouse and all text messages and emails to which the images and video recordings were attached.

On October 11, the Bossier City Marshal filed a petition of limited intervention. It stated that the Marshal would maintain custody of the three cell phones pending resolution of the issues related to the passcodes. On October 12, Judge Adams ordered the Marshal to surrender the three phones to the court and dismissed the intervention.

### October 12 hearing

The first issue addressed at the hearing was the recusal of the DA from the grand jury proceedings. Moving into the contempt part of the hearing, Magner called his first witness. However, before the witness could be sworn, ADA Hall filed a motion to recuse Judge Adams from presiding over the Sheriff's motion to recuse the DA. Attorney Patrick Harrington, with the Law Offices of J. Dhu Thompson, then filed a motion to enroll on behalf of Clark and Jones for the limited purpose of contesting the court's order for them to provide their passcodes as well as a request to stay the proceedings. Harrington reiterated that he was not representing Clark and Jones on the contempt charges. The attorney for the Bossier City Marshal next addressed the court concerning the release of the phones to the court.

After Clark raised questions about the combined contempt and recusal hearing as well as the nature of the contempt charges, Clark filed a motion

for a continuance at the hearing.[1]  Clark argued that the order alleging

contempt was factually devoid of what they had allegedly done wrong.

Clark also told the court that he would like to retain Thompson as his

attorney, but he was out of town at the time.  Harrington told Judge Adams

that Clark was asking the court to continue the contempt proceeding while

he was asking the court to continue his rule to show cause why the cell

phone passcodes should be compelled.  The motions were denied.  Clark's

request for the court to issue instanter subpoenas for Judge Amy McCartney,

Magner, and Magner's co-counsel was also denied.

After Judge Adams called for the first witness to come forward and

take his oath, Clark filed a motion to recuse Judge Adams.  He presented this

*pro se* motion prepared by him and Jones.  Judge Adams denied the motion

as procedurally inappropriate and told Clark that he should have filed it

before the hearing.  Clark agreed that his motion to recuse was similar to

Hall's earlier motion to recuse Judge Adams.  Judge Adams maintained that

Clark could not know about the alleged grounds for recusal beforehand and

then wait to file the motion until after he received an adverse ruling.

When Magner began questioning the first witness, Clark asked if

Magner was prosecuting the case or examining the witness on behalf of the

court.  Magner explained that he made the contempt allegations, sought the

rule to show cause, and believed as a party the Sheriff had standing to bring

the contempt charges.  Judge Adams granted Magner the authority to

---

[1] A *pro se* written motion to continue the contempt hearing was filed by Clark and Jones.  They maintained they were unaware if the proceeding was civil or criminal in nature, they had been unable to retain desired counsel, and the order setting the contempt hearing was devoid of facts alleging a violation.

prosecute the contempt matter on his behalf because "it works a whole lot better when we have someone other than the Court."

Deputy John Cooper testified that former Deputy Donnie Barber pointed out to him that Jones was in the back of the courtroom either taking photos or videos. Deputy Cooper saw Jones hold his phone up with the back pointing in the direction where Sheriff Richardson, most of the deputies present, and a few others were seated. Jones held the phone so that the camera was above the rail in front of him. He thought Jones was filming or recording based on how Jones was holding his phone and panning it back and forth. Cooper recalled that when Barber pointed at Jones, Jones put the phone in his coat pocket and pulled out a second phone. On cross-examination by Clark, Jones admitted that he did not see the face of Jones's cell phone or know the purpose for which he was using it.

Deputy Angela Bandy testified that she saw Clark walk into the courtroom holding a file with his cell phone barely above the file. Clark's actions appeared unusual to Deputy Bandy because of the angle he was holding the phone, the way he pivoted his body back and forth, and how he was looking in their direction. On cross-examination by Clark, Deputy Bandy admitted that she could not definitely say that Clark was photographing the court proceeding.

Donnie Barber, a former DPSO deputy, testified that he observed Jones get up from his seat, walk to the back corner of the courtroom, and take his cell phone out and pan that side of the courtroom. It appeared to Barber that Jones had been filming with his cell phone. After telling Deputy Cooper what he had seen, he waved at Jones. Barber admitted under cross-

6

examination by Clark that he came to the October 8 hearing because he was curious about the political dispute between the DA and DPSO.

Deputy Brett Jones testified that Judge Adams ordered him to retrieve the cell phones. He returned to the courtroom with Jones while Clark followed behind. When Clark handed his phone to Deputy Jones, it was open to the photo albums and Clark told him that there was nothing there. When Deputy Jones was instructed to see if there were any photos on Clark's phone that had been taken in the courtroom, he looked in the recently deleted album and found four photos, including photos of Sheriff Richardson, Magner, and his co-counsel. The photos were taken just before 10:00 a.m. that morning. On cross-examination by Clark, Deputy Jones stated that court had started at 9:00 that morning, and he guessed that court adjourned around 10:00. It had adjourned when he went across the hall to get Clark and Jones. He saw Jones and asked for his phone and for him to return to the courtroom. After the phones were turned over to Judge Adams, Deputy Jones followed Judge Adams to a stairway leading to chambers. They looked at the phones while on the stairway.

Kem Jones was the next witness called to testify by Magner. Clark told the court, "I guess acting as Counsel, Co-Defendant, all put together, Mr. Jones would like to exercise his Fifth Amendment Right at this time to not be questioned in this matter." When Magner attempted to make a proffer concerning Jones's testimony, Clark stated, "I guess I'm jumping up as Counsel just objecting to relevancy[.]" Clark also argued against Magner's request for an adverse inference in light of Jones's failure to testify.

The last witness called by Magner was Deputy Landon Williamson. He testified that he saw Jones get up from the front of the courtroom and walk to the back corner, slouch back, raise his phone just over the top of the chairs, and point it in the direction of where deputies were seated. Under cross-examination by Clark, Deputy Williamson acknowledged that it was possible that Jones left his seat and walked to the back of the courtroom merely to be alone and look at his phone. Deputy Williamson could not say for certain that Jones was recording the proceedings.

At the conclusion of Deputy Williamson's testimony, Magner argued that Jones should be compelled to provide the passcode to the phone issued to him by the DA. Harrington argued this issue on behalf of Clark and Jones. He told the court that his clients were asserting their Fifth Amendment privilege against disclosing the passcodes.

After Magner rested, Chief Civil Deputy Monica Cason was called to testify by the defense. Clark told the court that he was acting on his own behalf and not defending anyone else. Deputy Cason testified that she sat on the second row in the courtroom on October 8, and thought that Clark and Jones were sitting on the front row on the opposite side. She could not tell if they were taking photos or recording video. She observed Jones leave his seat and walk to the back of the courtroom, which she considered to be odd. She saw Jones with his phone up and the back of his phone facing her direction. It appeared to Deputy Cason that Jones was taking photos or video based on the way that he was holding his phone.

During closing arguments, Judge Adams asked Clark if he took photos in the courtroom on October 8, to which Clark responded that if he did it was before the court session began. He then stated that photos taken

8

that day were personal photos. Clark argued that he did not think anything was wrong with taking photos when court was not in session.

Judge Adams concluded that he had been presented with sufficient evidence to find Clark and Jones in contempt. He added that he would experience difficulty in arriving at a punishment without having a full appreciation of what was on their phones. He added that he would determine whether he could proceed with a search of their phones without their consent. Sentencing was deferred until October 15. When the court returned to the recusal issue on October 12, Magner asked Jones if he had been filming in the courtroom on October 8. Jones replied that he would not answer that question and was asserting his Fifth Amendment privilege. Judge Adams ruled that the DA was recused from all matters involving the investigation into the LACE program. This recusal extended to all of the individual deputies involved in the matter.

At the October 15 hearing, Judge Adams stated that he could not adequately fashion a sentence of contempt because he still did not have the contents of the phones. Thus, sentencing would be continued until he could obtain that information.

In a written ruling on October 30, Judge Adams stated that he found that Jones and Clark used their cell phones to take photographs and/or video inside his courtroom while court was in session in violation of District Court Rule 6.1(e). Judge Adams further stated that contempt proceedings were not final because Clark and Jones had not been sentenced and he had not rendered an order as required by La. C. Cr. P. art. 22.

On March 18, 2020, Judge Adams rendered an order stating that considering the admonishment given to Clark and Jones on October 12

9

sufficiently addressed the matter, and considering that the imposition of any punishment would not further serve the interests of justice or advance the goal of reducing contemptuous behavior, he ordered that no additional punishment would be imposed for their behavior. The cell phones were ordered to be returned.

Jones and Clark appealed. However, Clark dismissed his appeal. Adams, who retired as judge to successfully run for DeSoto Parish District Attorney in 2020, filed an *amicus curiae* brief on his own behalf.

## DISCUSSION

Jones, who is representing himself on appeal, argues: (i) the trial court erred in finding him guilty of direct contempt; (ii) the seizure and order to search his cellphone violated his Fourth Amendment rights to be free from unreasonable search and seizure; (iii) the denial of his motion to continue violated his right to counsel; (iv) the trial court erred in denying his motion to recuse Judge Adams; and (v) Magner was not qualified to prosecute him for contempt.

There are two kinds of contempt of court, direct and constructive. La. C. Cr. P. art. 20. A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness. La. C. Cr. P. art. 21. A constructive contempt of court is any contempt other than a direct one. La. C. Cr. P. art. 23.

10

As stated by this Court in *State v. Davis*, 52,517, pp. 20-21 (La. App. 2 Cir. 5/22/19) 273 So. 3d 670, 686-7, *writ denied*, 19-00928 (La. 11/25/19), 283 So. 3d 496:

> A contempt proceeding is considered a civil matter if its purpose is to force compliance with a court order, but is treated as a criminal matter if its purpose is to punish disobedience of a court order. In a criminal contempt proceeding, the object is to punish relator for contemptuous behavior in the presence of the court. Criminal contempt is a crime in every fundamental respect, and the defendant in a criminal contempt proceeding is entitled to the basic constitutional protections such as the presumption of innocence, the right to proof of guilt beyond a reasonable doubt, and the right not to be compelled to testify against himself.
>
> The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a defendant in a criminal proceeding against conviction of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." On appellate review of a criminal conviction, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the crime of which the defendant was convicted was proved beyond a reasonable doubt.

Citations omitted.

### *Sufficiency of evidence*

In his written reasons for ruling, Judge Adams characterized the proceeding as a criminal direct contempt of court proceeding. However, it was a criminal constructive contempt of court proceeding. Although the contempt was committed in Judge Adams's presence, he did not have personal knowledge of it. In fact, he was unaware of it until Magner alerted him about it. Nevertheless, the evidence presented at the contempt trial proved beyond a reasonable doubt that Jones committed criminal constructive contempt.

11

La. District Court Rule 6.1(e) states, "A judge should prohibit broadcasting, televising, recording, or the taking of photographs in the courtroom and areas immediately adjacent thereto, at least during sessions of court or recesses between sessions. See Code of Judicial Conduct Canon 3A(9)."

Rule 6.1(f) states that "[a] judge may prohibit the use of electronic devices, including cellular telephones and recording devices, in a courtroom." A sign outside the entrance to Judge Adams's courtroom set forth the courtroom rules, including that no cameras and no tape recorders were allowed.

Jones argues that Rule 6.1 is directed at judges as part of their duties. In support of his argument, he cites the unpublished case of *State v. Duhon*, 2019-609 (La. App. 3 Cir. 1/22/20), 2020 WL 365101. In *Duhon*, an attorney, Gregory, was found to be in criminal contempt of court for violating Rule 6.1(e) when he used his cell phone to videotape the handling of Duhon, who was being disruptive during his sentencing hearing. Reversing Gregory's conviction, the appellate court noted that Rule 6.1 was directed only at judicial conduct. The court further noted that there was no evidence of any violation of any specific rule of court.

The district court in *Duhon* did not publish a local court rule specifically prohibiting attorneys from videotaping court proceedings using their cell phones. Gregory admitted that a sign posted at the courthouse announced "no cell phones in the courthouse," but he understood that local custom allowed attorneys to have cell phones during court proceedings. The trial judge explained that while attorneys were allowed to have cell phones in the courtroom, they were expected to use their phones responsibly for

12

legitimate purposes, which did not include videotaping criminal court proceedings. The appellate court determined that it was "constrained to agree" with Gregory that Rule 6.1(e) was directed only at the duties of judges.

We disagree with the limits placed on Rule 6.1(e) by the appellate court in *Duhon*. Rule 6.1 governs "general courtroom conduct." Subject to the provisions of Canon 3A(9), Rule 6.1(e) encourages a judge to prohibit recording or taking of photographs in the courtroom during court sessions or recesses.[2] Unlike in *Duhon*, there was a sign outside Judge Adams's courtroom prohibiting cameras and tape recorders. The obvious intent of this sign was to express the rule that photographs and video were not to be taken in the courtroom as those are the obvious functions of a camera.

Jones further argues that there was no evidence to support a finding that he violated a court order, specific rule of court, published rule of court, or city or parish ordinance or law. We disagree. As noted above, the evidence included photos of the signs outside of the courtroom. Moreover, there was an abundance of testimony concerning Jones's actions with his phone in the courtroom. The evidence was sufficient to prove beyond a reasonable doubt that Jones committed constructive criminal contempt in Judge Adams's courtroom on October 8.

### Fourth Amendment

Jones argues that the seizure and order to search his cell phone violated his rights against an unreasonable search and seizure.

---

[2] We note that Rule 6.1(e) states a judge "should prohibit" rather than "shall prohibit."

13

Jones and Clark were ordered to surrender their phones presumably to prevent them from deleting any photographs or video on the phones of individuals present in the courtroom on October 8 as well as any evidence that the photos and/or video were attached to emails or text messages. On October 9, Judge Adams signed an order stating that probable cause existed for a search of the three cell phones, and he ordered that the contents of the phones be retrieved, analyzed, stored, and delivered to the court.

Even if it is assumed that the phones were unreasonably seized and searched, any assumed violation was harmless as Jones's contempt conviction was surely unattributable to the seizure and search because no evidence was ever gleaned from either of his phones. Jones was convicted based on the testimony of several witnesses regarding his behavior in court.

*Motion to continue*

Jones also argues that the denial of his motion to continue violated his right to counsel. We disagree. Jones was able to obtain counsel, albeit for the limited purpose of arguing his and Clark's motion for why they should not be compelled to provide their passcodes. Moreover, Clark, who is an attorney, cross-examined prosecution witnesses who solely testified about Jones's actions in court. Finally, when Magner called Jones to testify, Clark told the court that he was "acting as counsel, Co-Defendant, all put together," and that Jones was asserting his Fifth Amendment privilege. Jones's argument is without merit.

*Motion to recuse*

Jones maintains that the trial court erred in denying his motion to recuse Judge Adams and Judge McCartney. The motion was filed in court. Judge Adams denied the motion as improper pursuant to La. C. Cr. P. art.

14

674, which requires that the written motion "be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment." Jones notes that under La. C. Cr. P. art. 761, a bench trial commences when the first witness is sworn.

Confusion was created because the court initially heard the motion to recuse the District Attorney, then moved into the contempt portion of the hearing after placing the recusal of the District Attorney on "standby." At that point, Harrington rose to argue his motion regarding the passcodes as well as to file a motion to continue. Clark also began arguing a motion to continue. Harrington explained to Judge Adams that Clark was seeking to continue the contempt hearing, while he was asking to continue the hearing on his rule to show cause why the cell phone passcodes should not be compelled. The court denied Clark's motion to continue. Harrington then asked if his motion to continue was also denied. When requested to explain the basis of his motion, Harrington argued that it was in the interest of justice and preserving his clients' right to effective counsel. Harrington's motion was likewise denied. The court then denied Clark's request for instanter subpoenas. When the court called the first witness to come forward and take his oath, Clark filed a motion to recuse Judge Adams and Judge McCartney, which was denied as procedurally inappropriate.

We agree with the trial court that the motion to recuse was procedurally inappropriate. Harrington and Clark had argued several motions in this matter that were ruled upon by Judge Adams, and when the relief sought was not obtained, Clark submitted a written motion to recuse

15

which was obviously prepared beforehand. Clark agreed that his motion to recuse was essentially the same as a motion to recuse Judge Adams that had been filed by the DA. There was no error in denying the motion to recuse.

*Authority to prosecute*

Finally, Jones argues that the trial court erred in granting Magner the authority to prosecute him for contempt. In support of his argument, Jones cites La. C. Cr. P. art. 682. However, that article governs the appointment of a substitute for a recused district attorney, which is not an issue in this matter.

Jones also cites Article V, §26 of the Louisiana Constitution, which states that a district attorney "shall have been admitted to the practice of law in the state for at least five years prior to his election and shall have resided in the district for the two years preceding election." Jones points out that Magner does not live in the district.

Under La. C. Cr. P. art. 17, "[a court] has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt."

A rule to show cause alleging facts constituting constructive contempt may be issued by the court on its own motion or on motion of the district attorney. La. C. Cr. P. art. 24. Considering a court's mandate to issue the rule charging contempt, we determine that the appointment of a private attorney by the court to prosecute a contempt matter does not run afoul of the authority and power granted to a court even when the private attorney would not be qualified to serve as a district attorney in that particular district. Jones's argument is meritless.

16

## CONCLUSION

Based on the foregoing reasons, Jones's contempt conviction is

**AFFIRMED**.